**RECEIVED**

USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
SHREVEPORT, LOUISIANA

DATE _8 / 25 / 16_
⟊md

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

UNITED STATES OF AMERICA

CRIMINAL NO. _16 - CC214_

V.

(01)   DAVID FINCHER,
(02)   DAVID SMITH,
(03)   KENNETH LAMPKIN,
(04)   WILLIAM TERRY WRIGHT,
(05)   LIONEL KOONS, and
(06)   CHARLES FERRIS CALLIHAN

JUDGE _FOOTE_

MAGISTRATE JUDGE HORNSBY

## INDICTMENT

**THE GRAND JURY ALLEGES**

## COUNT 1
### (Criminal Conspiracy, 18 U.S.C. § 371)

AT ALL TIMES PERTINENT AND MATERIAL HEREIN

## I.   BACKGROUND

### A.   Explo Systems, Inc.

1.   Camp Minden, Louisiana (Camp Minden) is located in Webster Parish, Louisiana, and consists of approximately 15,000 acres. Camp Minden is owned and operated by the Louisiana Military Department (LMD).

2.   Explo Systems, Inc. (Explo) was a privately held corporation registered under the laws of the State of Louisiana. Explo's primary business operations in Louisiana involved the demilitarization of military munitions and the subsequent resale of the recovered energetic materials to mining operations.

3. From 2002 to 2013, Explo leased office buildings, commercial facilities and munition storage units known as igloos on Camp Minden from the LMD to conduct bomb demilitarization operations

4. DAVID PERRY FINCHER (FINCHER) and DAVID ALAN SMITH (SMITH) were the principal owners of Explo. FINCHER and SMITH oversaw, among other things, demilitarization operations, employee management, and business contracts related to the demilitarization operations.

5. WILLIAM TERRY WRIGHT (WRIGHT) was the Vice-President of Operations for Explo. As Vice President, WRIGHT oversaw, among other things, the actual day-to-day demilitarization operations at Explo and also sought out new clients to purchase materials recovered from the demilitarization operations.

6. KENNETH WAYNE LAMPKIN (LAMPKIN) was the Program Manager for the contract to demilitarize 155mm artillery propelling charges at Explo. As the Program Manager, LAMPKIN acted as Explo's primary point of contact for communications with government contracting officials and personnel.

7. LIONEL WAYNE KOONS (KOONS) was the Traffic and Inventory Control Manager at Explo. As such, KOONS oversaw the receipt of bombs and 155mm artillery propelling charges, the shipment of materials recovered from demilitarized bombs and artillery propelling charges, and the movement of materials between Explo leased facilities within Camp Minden.

8. CHARLES FERRIS CALLIHAN (CALLIHAN) was the Director of Engineering and Environmental Affairs at Explo. In this role, CALLIHAN oversaw

engineering designs for process equipment, environmental permitting, and process development at Explo.

## B. Federal and State Regulatory Agencies

9.     The Department of Defense (DoD) is a department of the executive branch of the United States government.  The Department of the Army (Army) is a branch of the United States Armed Services under the DoD.

10.    The Joint Munitions Command (JMC) is a department within the Army that provides the conventional ammunition life-cycle functions of logistics sustainment, readiness and acquisition support for all U.S. Armed Services, other government agencies, and allied nations as directed.  JMC headquarters is located at the Rock Island Arsenal in Illinois.

11.    The Army Contracting Command – Rock Island (ACC-RI) provides contracting support to DoD agencies, one of which is the JMC, as well as defense contractors.  The ACC-RI is also located along with JMC at the Rock Island Arsenal in Illinois.

12.    The Defense Contract Management Agency (DCMA) of the DoD is responsible for working directly with defense contractors to help ensure that DoD, federal, and allied government supplies and services are delivered timely, at projected cost, and meet all performance requirements.

13.    The DoD through the JMC, ACC-RI, and DCMA are responsible for, among other things, monitoring and enforcing the performance of demilitarization contracts.

14. The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) is an agency within the United States Department of Justice. The ATF is responsible for enforcing federal laws, regulations, and rules regarding the commercial possession and storage of explosive materials.

15. Occupational Safety and Health Administration (OSHA) is an agency within the United States Department of Labor. OSHA is responsible for enforcing federal laws, regulations, and rules regarding safe and healthy workplace environments.

16. The Environmental Protection Agency (EPA) is an agency within the executive branch of the United States. The EPA is responsible for, among other things, enforcing federal laws, regulations, and rules regarding the treatment, storage, transportation, and disposal of hazardous wastes.

17. The Louisiana Department of Environmental Quality (LDEQ) is an agency within the State of Louisiana. The LDEQ is responsible for, among other things, as delegated by the EPA, enforcing federal and state laws, regulations, and rules regarding the treatment, storage, transportation, and disposal of hazardous waste.

## C. Explo's Demilitarization Contract for 155mm Artillery Propelling Charge (M119A2)

18. In January 2010, JMC issued a public solicitation on the internet seeking contractors to conduct demilitarization of propelling charges, which were originally manufactured to fire projectiles from 155mm artillery pieces utilized by the

U.S. military. The main energetic component of the propelling charges was M6 propellant (M6), a solid, granular explosive material.

19.    On January 21, 2010, FINCHER, SMITH, and LAMPKIN on behalf of Explo, submitted and caused to be submitted to the JMC a document entitled "Proposal for Demilitarization of Charge, Propelling, 155mm, M119A2 DODIC D533NSN: 1320-01-093-6856 in response to: W152P1J-10-R-0005" (hereinafter "the Proposal") in response to JMC's solicitation for demilitarization of the propelling charges.

20.    The Executive Summary of the Proposal stated, among other things:

Explo Systems, Inc. is a Veteran Owned, Small Business Administration(SBA) Certified HUBZONE firm specializing in demilitarizing energetic munitions. Explo Systems has experience in processing, handling and recycling over 30,000 tons of energetic materials from smokeless propellants to high explosives.

Through this contract, each year we will generate four to nine million pounds of propellant for mining slurry operation. The current market for explosive slurry is large enough to facilitate all or most of the propellant generated each contract year. We have storage capacity for more than 70 million pounds of explosives between our Louisiana and Kentucky storage locations."

Currently Explo Systems, Inc., is permitted to store over 10,000,000 lbs. of energetic material in its 66 licensed igloo magazines at Minden. We also have underground storage of over 600 acres of BATF Certified explosive storage for propellants at its Slurry Facility at Kentucky Powder Co. mining site in the state of Kentucky. The Kentucky site has over 70,000,000 pounds of capacity unused."

21.    On March 24, 2010, JMC awarded Contract No. W52PIJ-10-C0025 - a Resource, Recovery, and Recycling (R3) contract – to Explo for the demilitarization of 450,000, 155mm artillery propelling charges designated as M119A2 (hereinafter the

Contract). Under the Contract, demilitarization is defined as "the act of removing the military offensive or defensive advantages of ammunition and explosives, which may or may not include the disposal of the item."

22. Under the terms of the Contract, JMC initially agreed to pay Explo $2,902,500 to demilitarize 450,000, 155mm artillery propelling charges with four (4) option years with the estimated value (with options) of $14,224,500. The Contract was amended several times to increase the quantity of propelling charges to be demilitarized and to change the payment provisions. The last amendment of the contract was on March 6, 2012, wherein JMC agreed to pay Explo approximately $8,617,500 to demilitarize 1,350,000 propelling charges.

23. Section 13.2 of the Contract provided that title and ownership of the recovered materials/components from the demilitarization of the propelling charges would pass to Explo upon the government's inspection and acceptances. Section 13.3 provided that a Certificate of Destruction (COD) be executed to certify, among other things, that the demilitarization of the propelling charges under the Contract was properly completed by Explo. Inspectors with DCMA were responsible for visiting and inspecting Explo at Camp Minden to verify and certify proper demilitarization of the propelling charges and to report any observed or detected noncompliance with the Contract. Explo prepared the CODs to be signed by the DCMA inspector and an Explo representative. Presentation of the duly executed CODs to JMC triggered payments from JMC to Explo for completing the demilitarization of the propelling charges.

24. Because title and ownership of the materials recovered from the propelling charge demilitarization process passed to Explo upon certification of demilitarization, Explo was entitled to sell the recovered materials from the demilitarization process to duly licensed or permitted third party purchasers. One of the recovered materials was a solid explosive propellant identified as M6. For Explo to sell the M6 recovered from the propelling charge demilitarization, Section 13.5 of the Contract required an End Use Certification (EUC) as a condition of sale. The terms of the EUCs as provided in Section 13.6 of the Contract state:

> End Use Certification shall consist of a signed statement from the purchasers as follows: It is hereby certified that [name of purchaser] will comply with all applicable Federal, State, and local ordinances, and regulations with respect to the care handling, storage and shipment, resale, export and other use of the material, hereby purchased, and that he/she as a user of, or dealer in, said materials is capable of complying with all applicable Federal, State, and local laws. The certification is made in accordance with and subject to the penalties of Title 18, Section 1001, of the United States Code, Crime and Criminal Procedure.

25. The information included on the EUCs included, but was not limited to, the identity of the purchaser, the date of sale, and the quantity of M6 subject to sale. Section 13.9 required that disposal of all materials must take place within 12 months of when the demilitarization was completed. Explo was responsible for forwarding the executed EUCs to JMC.

26. Section 3.1 of the Contract required Explo to establish a program for the receipt, storage, handling and demilitarization and disposal of the propelling charges delivered to Explo.

27.     Section 9.1 of the Contract required Explo's propelling charge demilitarization process to be environmentally safe and comply with all Federal, State, and local environmental laws, ordinances, codes, and regulations.

28.     Section 9.1 of the Contract also required Explo to ensure that any hazardous waste generated from the demilitarization process be disposed of in an environmentally safe manner.

29.     Section 12.3 of the Contract required Explo to provide adequate, safe, and secure storage of the components and material until such time as they are sold or disposed of through an approved process at Explo's expense.

**D.     Explo's Ammunition Demilitarization and Disposal Plan**

30.     On or about April 9, 2010, EXPLO submitted to JMC an Ammunition Demilitarization and Disposal Plan (ADDP) for the 155mm artillery propelling charges. The purpose of the ADDP, as provided therein, was to:

> [I]dentify safe and environmentally acceptable demilitarization and disposal requirements for the Charge, Propelling, 155mm, 11/1119A2 and illustrate the process of the demilitarization of the Charge, Propelling, 155mm, M119A2 and to establish that Explo Systems has the management capability and facility resources to perform.

31.     Section 5.2 for "Storage" of the ADDP states:

> Each lot will be consolidated and stored separately in approved storage magazines at Explo Systems Inc. in Minden, LA, until they are ready for demilitarization. Propellant recovered from the demilitarization operation will be kept separate by propellant type and lot until stability testing has been completed to determine final disposition. Storage magazines are compliant with DoD 4145.19 R1. The storage magazines and locations meet the requirements of DoD 5100.76-NI.

32. Section 8.1.1 "Receipt, Storage and Demilitarization at Explo Systems" states, "Propelling Charge, 155MM M119A2 will be transported by approved carriers from current military storage sites to Explo Systems. Explo Systems has an approved site plan on file with the JMC. Storage will be in one or more of the Explo Systems' above ground magazines."

33. Section 8.2 "Accountability Procedures and Material Tracking" states:

Once the explosive material has been removed from the propelling charge canister the metal parts go to the recycling bin and the travelers stay with the energetic material. If the material is returned to the magazines, it is put onto another Inventory Movement Sheet (Form #54) and returned to the magazine area, then logged into the magazine (Form #52). If the propellant/CBI material is sent immediately to the Kentucky Mining storage, then it is received there and documented on the shipping manifest. Black powder will be recycled through a state and federal licensed black powder distributor and tracked by Explo's (Form #29) EUC. All shipping documents are logged into Explo's ICS Database. The travelers are collected, checked against ICS and the Inventory Movement Sheets, and then stored.

34. Explo received its first shipment of propelling charges to be demilitarized pursuant to the Contract on or about June 23, 2010, and continued to receive propelling charges until December 2012.

E. **Resource Conservation and Recovery Act**

35. The Resource Conservation and Recovery Act, Title 42, United States Code, Sections 6901 et seq., (RCRA) imposes regulations upon those who generate, treat, store, transport or dispose of hazardous waste. RCRA establishes a comprehensive regulatory scheme to govern and track hazardous waste from the point of generation until its final disposal in order to assure public health and safety.

36.     RCRA requires any person owning or operating a facility that generates, treats, stores or disposes of a listed or identified hazardous waste to notify the EPA or delegated state authority of that activity, and to identify the hazardous waste handled by such person. RCRA prohibits the treatment, storage and disposal of any listed or identified hazardous waste without a permit or interim status issued by EPA or a state delegated by EPA to administer RCRA. Louisiana is an authorized delegated state under RCRA.

37.     Hazardous waste may only be delivered for treatment, storage, or disposal to a facility permitted under RCRA to handle the specified type of waste, i.e., reactive hazardous waste can only be delivered to a facility permitted to treat, store or dispose of reactive hazardous waste.

38.     RCRA requires small quantity generators (SQGs) and large quantity generators (LQGs) of hazardous waste to obtain an EPA Identification (EPA ID) number. A SQG is any owner or operator who generates over 100 kilograms of hazardous waste per month and a LQG is any owner or operator who generates over 1,000 kilograms of hazardous waste per month. The EPA ID number is used by EPA to track hazardous wastes from the point of generation to the final disposal site.

39.     Hazardous wastes subject to RCRA are identified, defined, and listed at 40 C.F.R. Part 261. Waste is hazardous and covered under RCRA if it is either listed or exhibits one of four hazardous waste characteristics: ignitability, corrosivity, toxicity, or reactivity.

40.     According to Part 261, if a waste exhibits the characteristic of reactivity, it is identified as a D003 hazardous waste. A reactive waste is one that readily explodes or undergoes violent reactions. Prevalent examples include discarded munitions or explosives.

41.     A waste is reactive if it meets any of the following criteria: a) Explodes or reacts violently when exposed to water or under normal handling conditions; b) Creates toxic fumes or gases when exposed to water or under common handling conditions; c) Generates toxic levels of sulfide or cyanide gas when exposed to a pH range of 2 through 12.5; d) Meets the criteria for classification as an explosive under U.S. Department of Transportation rules or is; e) Capable of detonation or explosive reaction if it is subjected to a strong initiating source or if heated under confinement.

42.     On June 3, 2004, Explo submitted a written notification to the LDEQ advising that Explo had been issued EPA ID number LAR000032607 after Explo identified themselves as a LQG generating D003 reactive hazardous waste. The notification to LDEQ was signed by FINCHER and listed SMITH as the site contact.

43.     From 2009 to 2011, Explo had a subcontract with General Dynamics Ordnance and Tactical Systems (GD-OTS) to demilitarize 30,144, M117 bombs for JMC. Explo personnel cut the bombs open and then placed sections of the bomb into steam hoods to soften the asphalt/tar which held the TNT inside the bombs. Explo personnel referred to this TNT and asphalt/tar mixture as Type II.

44.     From 2011 to 2012, Explo had an arrangement with Accurate Energetic Systems (AES) to process 2,000,000 lbs of high tar H6 explosive removed during the

11

demilitarization of 2,000 pound bombs at the McAlester Army Ammunition Plant in Oklahoma. H6 is an explosive composed of RDX, nitrocellulose, TNT, and aluminum. Similar to material recovered from the GD-OTS contract, Explo personnel also commonly referred to this high tar H6 explosive as Type II explosive material.

45.     During the period of 2011 to 2012, Explo to avoid costs, did not ship or transport any hazardous waste to a permitted hazardous waste facility for appropriate treatment and disposal. However, from on or about April 21, 2011, to on or about October 30, 2012, Explo caused D003 reactive hazardous wastes to be transported to non-hazardous waste landfills in El Dorado, Arkansas and Minden, Louisiana in order to make room for the storage of M6. Explo officials did not advise the operators of the landfills of the hazardous and explosive properties and characteristics of the D003 reactive hazardous waste.

**F.   <u>Regulations for Storage of Explosives</u>**

46.     Pursuant to Title 18 United States Code 841(d), an explosive means any chemical compound mixture, or device, the primary or common purpose of which is to function by explosion; the term includes, but is not limited to, dynamite and other high explosives, black powder, pellet powder, initiating explosives, detonators, safety fuses, squibs, detonating cord, igniter cord, and igniters.

47.     Pursuant to Title 22, Code of Federal Regulations, Part 555.203(d), low explosives such as M6 propellant, must be stored at all times in a Type 4 storage magazine unless in the process of manufacture, being physically handled in the operating process of a licensee, being used or being transported to storage by a

licensee. A Type 4 storage magazine is defined by Title 22 Part 555.210 as a building, igloo or "Army-type structure", tunnel, dugout, box, trailer, or a semitrailer or other mobile magazine. Title 22 Part 555.210(a) states that outdoor magazines are to be fire-resistant, weather-resistant, and theft-resistant. The ground around outdoor magazines must slope away for drainage or other adequate drainage be provided. When unattended, vehicular magazines must have wheels removed or otherwise be effectively immobilized by kingpin locking devices or other methods approved by the Director (ATF). Title 22 Part 555.210(b) states that indoor magazines are to be fire-resistant and theft-resistant. They need not be weather-resistant if the buildings in which they are stored provide protection from the weather. No indoor magazine is to be located in a residence or dwelling. The indoor storage of low explosives must not exceed a quantity of 50 pounds. More than one indoor magazine may be located in the same building if the total quantity of explosive materials stored does not exceed 50 pounds. Both outdoor and indoor magazines have construction and lock requirements as well.

G.   **October 15, 2012 Explosion at Explo**

48.    On or about October 15, 2012, an explosion occurred at a munitions storage igloo, which was leased by Explo from LMD. The explosion encompassed Igloo 2464, which contained approximately 124,190 pounds of smokeless powder and a box van trailer contained approximately 42,240 pounds of demilitarized M6.

49. The damage caused by the explosion included, but was not limited to, the destruction of the igloo and trailer, shattered windows of dwellings within a four-mile radius, and the derailment of 11 rail cars located near the igloo.

50. The total area of the destruction and contamination was approximately 1,250 feet by 1,250 feet.

## II.  CONSPIRACY

Beginning on or about a date unknown to the Grand Jury, but no later than January 1, 2010, and continuing to the present, in the Western District of Louisiana, and elsewhere, the Defendants, DAVID FINCHER, DAVID SMITH, WILLIAM TERRY WRIGHT, KENNETH LAMPKIN, LIONEL KOONS, and CHARLES FERRIS CALLIHAN, and others both known and unknown to the Grand Jury, did knowingly and unlawfully combine, conspire, and confederate and agree to defraud the United States by obstructing, hampering, hindering, frustrating, defeating, impairing, and impeding by craft, trickery, deceit, and dishonest means the DoD, JMC, ACC-RI, DCMA, OSHA, ATF, EPA, and LDEQ of their lawful and proper governmental functions of monitoring and assessing, among other things, the storage conditions and handling of M6 propellant and reactive hazardous waste at Explo, and to commit certain offenses against the United States, namely, False Statements in violation of Title 18 United States Code, Section 1001; Wire Fraud in violation of Title 18 United States Code, Section 1343; Knowingly Transporting Hazardous Waste to an Unpermitted Facility in violation of Title 42 United States Code, Section

6928(d)(1)); and Unlawfully Storing Explosives in violation of Title 18 United States Code, Section 842(j).

## III. OBJECTS OF CONSPIRACY

The object of the conspiracy was for the defendants to obtain money from the government to which they were not entitled.

### A. MANNER AND MEANS OF CONSPIRACY AND SCHEME AND ARTIFICE TO DEFRAUD

As part of the manner and means of the conspiracy and the scheme and artifice to defraud, the defendants committed and caused to be committed various acts, including but not limited to, the following:

1. DAVID FINCHER, DAVID SMITH, and KENNETH LAMPKIN made false material statements to JMC, DoD, and ACC-RI in the Proposal regarding Explo's capability to store and dispose of demilitarized M6 propellant;

2. DAVID FINCHER, DAVID SMITH, WILLIAM TERRY WRIGHT, KENNETH LAMPKIN, and LIONEL KOONS caused the improper and unsafe storage of demilitarized M6 propellant and Type II material on Explo Camp Minden Facility;

3. DAVID FINCHER, DAVID SMITH, WILLIAM TERRY WRIGHT, KENNETH LAMPKIN, LIONEL KOONS, and CHARLES FERRIS CALLIHAN impeded, interfered, and obstructed DCMA, ATF, and OSHA officials' inspection and examination of areas on Explo's facility where demilitarized M6 propellant and Type II explosive materials were stored under improper and unsafe conditions;

4. DAVID FINCHER, DAVID SMITH, and WILLIAM TERRY WRIGHT caused third parties to certify EUCs under false pretenses and intentionally did not disclose to the third parties that Explo intended to and in fact did submit the EUCs to JMC as proof of sales of demilitarized M6 propellant, when in truth and fact, no such sales occurred;

5. DAVID SMITH, DAVID FINCHER, WILLIAM TERRY WRIGHT, KENNETH LAMPKIN, and LIONEL KOONS caused false EUCs to be submitted to JMC that represented certain quantities of demilitarized M6 were sold to parties, when in truth and fact, no such sales occurred;

6. DAVID SMITH, DAVID FINCHER, WILLIAM TERRY WRIGHT, and KENNETH LAMPKIN caused EUCs to be submitted to JMC that contained forged, false, and fabricated signatures on the certification provision of the EUCs;

7. DAVID SMITH, DAVID FINCHER, LIONEL KOONS, WILLIAM TERRY WRIGHT, and CHARLES FERRIS CALLIHAN caused the illegal transportation and disposal of D003 reactive hazardous waste generated from the processing of Type II explosive materials to unpermitted non-hazardous waste landfills in Louisiana and Arkansas to make room for the storage of M6 propellant; and

8. DAVID SMITH, DAVID FINCHER, WILLIAM TERRY WRIGHT, LIONEL KOONS, KENNETH LAMPKIN, and CHARLES FERRIS CALLIHAH made material false statements after the October 15, 2012 explosion to law enforcement officials, regulatory officials, government officials, and others in order

conceal their illegal conduct and prevent the discovery of improperly stored and unaccounted demilitarized M6 at the Explo facility.

**B.    OVERT ACTS**

In furtherance of the conspiracy and to effect the objects of the conspiracy, the allegations in Counts 2-32 are incorporated and set forth herein as overt acts.

All in violation of Title 18, United States Code, Section 371. [18 U.S.C. § 371],

**COUNTS 2-18**
**(False Statements, 18 U.S.C. § 1001)**

A    The allegations of Count One are realleged and incorporated by reference as though as set forth in full herein.

B.    On or about January 19, 2012, in the Western District of Louisiana, the defendants, DAVID FINCHER, DAVID SMITH, WILLIAM TERRY WRIGHT, LIONEL KOONS, and KENNETH LAMPKIN, did willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, a false writing or document, knowing the same to contain a materially false, fictitious, and fraudulent statement.  Specifically, DAVID FINCHER, DAVID SMITH, WILLIAM TERRY WRIGHT, LIONEL KOONS, and KENNETH LAMPKIN submitted and caused to be submitted to JMC, a department under

the United States Army, EUCs set forth below that purported that "James D. Mann" Manager certified, under penalties of Title 18, United States Code, Section 1001, that Boren Explosives, Inc. purchased from Explo quantities of "Smokeless Powder (M6 Propellant)" set forth below, when in truth and fact, Boren Explosives, Inc. did not purchase said quantities of "Smokeless Powder (M6 Propellant)" and James D. Mann did not sign and certify said EUCs:

| Counts | EUC # | Purported Quantities Purchased in pounds |
|--------|-------|------------------------------------------|
| 2 | BE009A | 129,360 |
| 3 | BE009B | 193,720 |
| 4 | BE009C | 119,280 |
| 5 | BE009D | 188,160 |
| 6 | BE009E | 208,280 |
| 7 | BE009F | 171,360 |
| 8 | BE009G | 220,920 |
| 9 | BE009H | 114,056 |
| 10 | BE009J | 172,200 |
| 11 | BE009K | 176,120 |
| 12 | BE009L | 163,800 |
| 13 | BE009M | 219,240 |
| 14 | BE009N | 199,080 |

| 15 | BE009P | 297,360 |
|----|--------|---------|
| 16 | BE009Q | 119,132 |
| 17 | BE009R | 295,154 |
| 18 | BE009S | 278,544 |

All in violation of Title 18 United States Code, Section 1001. [18 U.S.C. § 1001].

### COUNT 19
**(False Statements, 18 U.S.C. § 1001)**

A.    The allegations of Count One are realleged and incorporated by reference as though as set forth in full herein.

B.    On or about December 12, 2012, in the Western District of Louisiana, the defendants, DAVID FINCHER, DAVID SMITH, WILLIAM TERRY WRIGHT, LIONEL KOONS, and KENNETH LAMPKIN, did willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, a false writing or document, knowing the same to contain a materially false, fictitious, and fraudulent statement. Specifically, DAVID FINCHER, DAVID SMITH, WILLIAM TERRY WRIGHT, LIONEL KOONS, and KENNETH LAMPKIN submitted and caused to be submitted to the JMC, a department under the United States Army, an EUC that purported to have been signed

and certified by "Jim Brakefield", the Owner and President of Brakefield Equipment, Inc. under penalties of Title 18, United States Code, Section 1001, wherein said EUC certified that Brakefield Equipment, Inc. purchased 3,674,000 pounds of "Smokeless Powder (M6 Propellant)", when in truth and fact, Brakefield Equipment, Inc. did not purchase said quantity of "Smokeless Powder (M6 Propellant)" and Jim Brakefield did not sign and certify said EUC.

All in violation of Title 18 United States Code, Section 1001. [18 U.S.C. § 1001].

**COUNTS 20-21**
**(False Statements, 18 U.S.C. § 1001)**

A.    The allegations of Count One are realleged and incorporated by reference as though as set forth in full herein.

B.    On or about the dates set forth below, in the Western District of Louisiana, the defendants, DAVID FINCHER, DAVID SMITH, WILLAIM TERRY WRIGHT, LIONEL KOONS, and KENNETH LAMPKIN, did willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, a false writing or document, knowing the same to contain a materially false, fictitious, and fraudulent statement. Specifically, DAVID FINCHER, DAVID SMITH, WILLIAM TERRY WRIGHT, LIONEL KOONS, and KENNETH LAMPKIN submitted and caused to be submitted to JMC, a department under

the United States Army, EUCs set forth below that certified that, under penalties of Title 18, United States Code, Section 1001, Brakefield Equipment, Inc. purchased from Explo quantities of "Smokeless Powder (M6 Propellant)" set forth below, when in truth and fact, Brakefield Equipment, Inc. did not purchase said quantities of "Smokeless Powder (M6 Propellant)":

| Counts | Dates of Email Transmission to JMC | EUC # | Purported Quantities Purchased in Pounds |
|--------|-----------------------------------|-------|------------------------------------------|
| 20 | July 2, 2012 | BE007 | 3,500,000 |
| 21 | June, 28, 2012 | BE007 | 3,500,000 |

All in violation of Title 18 United States Code, Section 1001. [18 U.S.C. § 1001].

**COUNT 22-23**
**(False Statements, 18 U.S.C. § 1001)**

A.    The allegations of Count One are realleged and incorporated by reference as though as set forth in full herein.

B.    On or about December 11, 2012, in the Western District of Louisiana, the defendants, DAVID FINCHER, DAVID SMITH, WILLAIM TERRY WRIGHT, LIONEL KOONS, and KENNETH LAMPKIN, did willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, a false writing or document, knowing the same to contain a materially false,

fictitious, and fraudulent statement. Specifically, DAVID FINCHER, DAVID SMITH, WILLIAM TERRY WRIGHT, LIONEL KOONS, and KENNETH LAMPKIN submitted and caused to be submitted to JMC, a department under the United States Army, EUCs set forth below that certified that, under penalties of Title 18, United States Code, Section 1001, Phoenix Mining Company purchased from Explo quantities of "Smokeless Powder (M6 Propellant)" set forth below, when in truth and fact, Phoenix Mining Company did not purchase said quantities of "Smokeless Powder (M6 Propellant)":

| Counts | EUC # | Purported Quantities Purchased in Pounds |
|--------|-------|------------------------------------------|
| 22     | PM001 | 152,592                                  |
| 23     | PM002 | 500,000                                  |

All in violation of Title 18 United States Code, Section 1001. [18 U.S.C. § 1001].

## COUNTS 24
### (False Statements, 18 U.S.C. § 1001)

A.    The allegations of Count One are realleged and incorporated by reference as though as set forth in full herein.

B.    On or about January 19, 2012, in the Western District of Louisiana, the defendants, DAVID FINCHER, DAVID SMITH, WILLIAM TERRY WRIGHT, LIONEL KOONS, and KENNETH LAMPKIN, did willfully

and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, a false writing or document, knowing the same to contain a materially false, fictitious, and fraudulent statement. Specifically, DAVID FINCHER, DAVID SMITH, WILLIAM TERRY WRIGHT, and KENNETH LAMPKIN submitted and caused to be submitted to JMC, a department under the United States Army, an EUC labeled "KP001" that certified that, under penalties of Title 18, United States Code, Section 1001, Kentucky Powder, Inc. purchased from Explo 2,160,000 pounds of "Smokeless Powder (M6 Propellant)", when in truth and fact, Kentucky Powder, Inc. did not purchase said quantities of "Smokeless Powder (M6 Propellant)."

All in violation of Title 18 United States Code, Section 1001. [18 U.S.C. § 1001].

## COUNT 25
### (False Statements, 18 U.S.C. § 1001)

A.     The allegations of Count One are re-alleged and incorporated by reference as though as set forth in full herein.

B.     On or about October 25, 2012, in the Western District of Louisiana, CHARLES FERRIS CALLIHAN did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the United States Department of Labor, Occupational Safety and Health Administration (OSHA), under the executive branch of the government of the United States. Specifically, CHARLES FERRIS CALLIHAN stated to an agent of OSHA during an interview at the Explo facility that propellant was only stored in magazines, when in truth and fact, CHARLES FERRIS CALLIHAN then and well knew that propellant was not only stored in magazines at Explo.

All in violation of Title 18 United States Code, Section 1001. [18 U.S.C. § 1001].

## COUNT 26
### (False Statements, 18 U.S.C. § 1001)

A.     The allegations of Count One are re-alleged and incorporated by reference as though as set forth in full herein.

B.     On or about November 27, 2012, in the Western District of Louisiana, LIONEL KOONS did willfully and knowingly make a materially

false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the JMC, a department under the United States Army under the executive branch of the Government of the United States. Specifically LIONEL KOONS, used his email account and address "lionelkoons@explosystems.com" to send an email to a JMC official wherein LIONEL KOONS requested that JMC cease delivery of propellant to Explo because Explo was in the middle of an annual audit by the Louisiana State Police and the Bureau of Alcohol Tobacco and Firearms, when in truth and fact, LIONEL KOONS then and well knew that the Louisiana State Police and the Bureau of Alcohol Tobacco and Firearms were not performing annual audits, but rather the Louisiana State Police was executing a state search warrant at the Explo facility on Camp Minden to investigate alleged violations of Louisiana state law and had ordered Explo to cease further receipt of M6 because Explo did not have sufficient storage for additional M6.

All in violation of Title 18 United States Code, Section 1001. [18 U.S.C. § 1001].

# COUNTS 27-32
## (Wire Fraud, 18 U.S.C. § 1343)

A.    The allegations of Count One are realleged and incorporated by reference as though as set forth in full herein as the scheme and artifice to defraud.

B.    On or about the dates set forth below, in the Western District of Louisiana, and elsewhere, DAVID FINCHER, DAVID SMITH, WILLIAM TERRY WRIGHT, LIONEL KOONS, and KENNETH LAMPKIN, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money or property by means of false or fraudulent pretenses, representations, or promises and attempting to do so, did knowingly transmit or cause to be transmitted in interstate commerce, that is from the Western District of Louisiana to  JMC located at Rock Island, Illinois, certain signs, signals and sounds, as described and set forth on the dates below:

| Count | Date of Email Transmission | Substance of Email Transmission |
|-------|---------------------------|--------------------------------|
| 27 | January 19, 2012 | 17 EUCs dated "15 JUN 2011" certifying  Boren Inc. purchases of 3,287,434lbs of  M6 Propellant |
| 28 | January 19, 2012 | 1 EUC dated "6 JAN 2012" certifying Brakefield Inc. purchase of 2,084,192lbs of  M6 Propellant |
| 29 | July 2, 2012 | 1 EUC dated "25 JUN 2012" certifying Brakefield Inc. purchase of 3,500,000lbs of  M6 Propellant |

| 30 | Jun 28, 2012 | 1 EUC dated "20 JUL 2012" certifying Brakefield Inc. purchase of 3,500,000lbs of M6 Propellant |
|----|----|----|
| 31 | December 12, 2012 | 1 EUC dated "20 JUN 2012" certifying Brakefield Inc. purchase of 3,674,000lbs of M6 Propellant |
| 32 | January 19, 2012 | 1 EUC dated "11 JUL 2011" certifying Kentucky Powder, Inc., purchase of 2,160,000lbs of M6 Propellant |

All in violation of Title 18 United States Code, Section 1343. [18 U.S.C. § 1343].

A TRUE BILL

## *REDACTED*

Grand Jury Foreperson

STEPHANIE A. FINLEY
United States Attorney

EARL M. CAMPBELL
Assistant United States Attorney
300 Fannin Street
Shreveport, Louisiana 71101